COURT OF APPEALS
DECISION
DATED AND FILED

August 4, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP354**

STATE OF WISCONSIN

Cir. Ct. No. **2020ME352**

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF J.C.S.:

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

J.C.S.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Winnebago County: BARBARA H. KEY, Judge. *Affirmed*.

¶1    GUNDRUM, P.J.[1]   J.C.S. appeals from an order of the circuit court for involuntary commitment pursuant to WIS. STAT. ch. 51 and also challenges an order for involuntary medication and treatment.   She argues that Winnebago County failed to introduce sufficient evidence that she was a "proper subject for treatment" under ch. 51, and thus, the circuit court erred in ordering her commitment and the involuntary administration of medication and treatment.[2]   We disagree and affirm.

¶2    As relevant here, for the circuit court to order J.C.S.'s commitment, the County had to prove by clear and convincing evidence that she is mentally ill, a proper subject for treatment, and dangerous pursuant to WIS. STAT. § 51.20(1)(a)2., (1)(am).   *See* § 51.20(1)(a), (13)(e).   Only the "proper subject for treatment" showing is at issue in this case.

¶3    Whether the County has met its burden of proof to support J.C.S.'s commitment presents a mixed question of law and fact.   *See Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.   "[T]he circuit court's findings of fact are reviewed for clear error, but application of those facts to the statute … [is] reviewed independently."   *Winnebago County v. Christopher S.*, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109.   "[W]e accept reasonable inferences from the facts available to the circuit court."   *Id.* (citation omitted).

---

[1]   This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]   Although J.C.S. challenges the circuit court order for involuntary medicine and treatment, she does not address that order separately.

¶4    In the WIS. STAT. ch. 51 context, "treatment" "comprises 'those psychological, educational, social, chemical, medical or somatic techniques *designed to bring about rehabilitation* of a mentally ill, alcoholic, drug dependent or developmentally disabled person." ***J.W.J.***, 375 Wis. 2d 542, ¶21 (emphasis added) (citing WIS. STAT. § 51.01(17)).  Our supreme court has further stated that "if treatment will go beyond controlling activity and will go *to* controlling the disorder and its symptoms, then the subject individual has rehabilitative *potential*, and is a proper subject for treatment." ***Id.***, ¶¶23, 36 (emphasis added) (citing ***Fond du Lac County v. Helen E.F.***, 2012 WI 50, ¶36, 340 Wis. 2d 500, 814 N.W.2d 179).  The ***J.W.J.*** court clarified that "rehabilitation is not synonymous with cure," ***J.W.J.***, 375 Wis. 2d 542, ¶32, but refers to improving the condition of the patient by lessening the significance of symptoms and behaviors of concern, ***id.***, ¶¶36, 38.  "The key is that the rehabilitative treatment addresses itself to the symptom, not … activities." ***Id.***, ¶34 n.15.  In this case then, if treatment goes "to" controlling J.C.S.'s disorder, symptoms and/or behaviors, then she is considered to have "rehabilitative potential" and be a "proper subject for treatment."

¶5    At the final hearing on involuntary commitment, Dr. Maria Baldomero testified that she had met with J.C.S. once a week since J.C.S.'s admission to Wisconsin Resource Center.  Baldomero indicated that J.C.S. suffers from "a mental illness mostly involving thought disorder and it is schizophrenia." She added that this disorder constitutes "a substantial affectation of thought, mood and perception" and agreed that it also "grossly impair[s] [J.C.S.'s] judgment or behavior," "her capacity to recognize reality," and "her ability to meet the ordinary demands of life."  She testified to J.C.S. refusing meals "going on days" as well as

to specific instances of dangerous conduct in which J.C.S. had displayed significant physical aggression toward staff members.

¶6     Baldomero further testified at the final hearing that J.C.S. had "received the first medication injection" on the day of that probable cause hearing. Baldomero agreed that the medication would have therapeutic value for J.C.S. and that J.C.S. is a proper subject for treatment. She detailed her observations of J.C.S. over the subsequent five weeks related to the "impact" the administration of the medication had had on J.C.S., stating that "ever since" that first injection J.C.S. "seems more willing to talk to staff and … have a dialogue or conversation" and appeared to be "less of a threat." J.C.S.'s eating had also improved since she began having the medication administered to her. Following testimony, the circuit court concluded inter alia that J.C.S. was a proper subject for treatment.

¶7     We conclude that the circuit court did not err. While the County could have (and should have) done more to flesh out additional details from Baldomero related to the element of "proper subject of treatment," just enough was done here. The question to us is whether the treatment, in this case the medication, "go[es] to"/"addresses itself to" controlling or improving J.C.S.'s disorder, its symptoms, and related behaviors, thus indicating that J.C.S. has "rehabilitative potential." *See* **J.W.J.**, 375 Wis. 2d 542, ¶¶23, 34 n.15, 36. Here, Baldomero identified that disorder as "thought disorder" and "schizophrenia." "[S]ubstantial affectation of thought, mood and perception," "gross[] impair[ment of] judgment or behavior," and "capacity to recognize reality" are all symptoms of her disorder, whereas her refusal to eat and her display of physical aggression towards staff members are behaviors stemming from her disorder and symptoms. Baldomero's uncontradicted testimony was that in the five weeks since J.C.S. started having the medication administered to her, her symptoms and behaviors

had improved as she was willing to converse with staff, was eating better, and was "less of a threat."  This was sufficient to support the determination that she has rehabilitative potential and is a proper subject for treatment.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.